1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8  OSSIE LEE SLAUGHTER,

9                              Plaintiff,

10         v.

11  JOHN T. PADILLA, et al.,

12                              Defendants.

CASE NO. 2:22-cv-01680-BHS-BAT

**REPORT AND
RECOMMENDATION**

13        Plaintiff, a Washington prisoner in Monroe Correctional Complex ("MCC"), appearing

14  *pro se* and *in forma pauperis*, brings this 42 U.S.C. § 1983 civil-rights action contending that

15  numerous correctional officers and Washington State Department of Corrections employees

16  violated his constitutional rights and federal law. The Court declined to serve the Complaint due

17  to fatal pleading deficiencies but granted leave to file an amended complaint and two extensions

18  of the deadline for doing so. Dkts. 7, 11, 15, 18. The Court recommends declining to serve and

19  **DISMISSING with prejudice** Plaintiff's Amended Complaint, Dkt. 19, for failure to state a

20  claim upon which relief may be granted, 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1), and

21  **DENYING** Plaintiff's motions for a temporary restraining order ("TRO") and a preliminary

22  injunction ("PI"), Dkts. 5, 16.

23

REPORT AND RECOMMENDATION - 1

**BACKGROUND**

Plaintiff contends that Defendants violated the First, Fifth, Eighth, and Fourteenth Amendments, the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.* (1990), the Prison Rape Elimination Act of 2003 ("PREA"), 34 U.S.C. Ch. 303, and Article 1 § 3 of the Washington State Constitution. Dkt. 19, at 6, 15–33. Defendants are all state employees associated with MCC or the Washington State Department of Corrections sued in their individual and official capacities: (1) Brandi Peterson, a former corrections officer now serving as a resolution specialist; (2) Frank Kirby, a corrections unit supervisor; (3) Jason Heuer, a corrections officer;[1] (4) Theresa Cohn, a corrections program manager; (5) Fortunata Posabella, a corrections officer; (6) Brian Harvold, a correctional unit supervisor; (7) Todd Olmsted-Fredrickson, a disciplinary hearings officer; (8) John T. Padilla, Associate Superintendent for MCC; (9) Paula Chandler, Associate Superintendent of MCC; (10) Michael Cannon, a corrections sergeant; (11) Steve Ewing, a disciplinary hearings officer; (12) Louis Stemler, a resolution request complaint specialist; (13) Savannah Heib, a resolution specialist; (14) Daniel W. White, Superintendent of MCC; (15) Corrections Officer Stapp, a property room officer; (16) Corrections Officer J. Harris; (17) Leslie O'Connor, a correctional programs manager; (18) Michael Hathaway, a disciplinary hearings manager; (19) Carol Smith, a resolution request manager; (20) Erik Jackson, Deputy Director for the Department of Corrections; (21) Cheryl Strange, Secretary of the Department of Corrections; and (22) two additional, as-yet-unnamed John Doe defendants. Dkt. 19, at 7–15.

---

[1] Plaintiff does not list Jason Heuer as a Defendant in the section of the Amended Complaint referring to "The Parties." Dkt. 19, at 7–22. Plaintiff does, however, refer to Mr. Heuer as a Defendant in his allegations of improper conduct. Dkt. 19, at 15–17. The Court will therefore presume that Plaintiff intends to sue Mr. Heuer.

1    Plaintiff states that he was transferred from Washington Correctional Complex – Cedar

2    Unit ("WCC – Cedar Unit") to Monroe Correctional Complex – Minimum Security Unit

3    ("MCC-MSU") for hernia surgery on October 19, 2021. Dkt. 19, at 7. Plaintiff alleges that since

4    that time, Defendants have violated his federal and state constitutional rights and federal law by

5    targeting him with malicious harassment, retaliation, ADA discrimination, racial discrimination,

6    a PREA violation, and punitive treatment. *Id.* Plaintiff refers to Defendant Peterson violating his

7    rights by improperly citing him for using the restroom without authorization during a prison

8    count and thereby viewing his genitals without forewarning or consent; times he was improperly

9    infracted for being in the wrong area at the wrong time; restrictions on the number of his

10    simultaneous complaints; restrictions on his ability to send a questionnaire to Defendant Peterson

11    to gather information for a disciplinary hearing; and the administrative hearing process

12    upholding the infractions written for his conduct. *See, e.g.*, Dkt. 19, at 16–33, 475. Broadly,

13    Plaintiff alleges that the his hernia pain and bladder discomfort means that it was a violation of

14    the ADA for Defendants to have enforced the rule that prisoners could not be in the restroom

15    during a prison count; that because Defendant Peterson, a female officer, viewed his genitals in

16    the process of infracting him for being in the restroom during count constituted a sexual assault

17    in violation of PREA; and that it was a violation of his constitutional rights for the many

18    complaints he filed to be rejected upon investigation and appeal. *See* Dkt. 19, at 16–33. That is,

19    Plaintiff seeks relief from employees of the correctional system who either infracted him,

20    disagreed with his assertions, or impeded his information gathering during the administrative

21    process.

22    Plaintiff's Amended Complaint plus supporting documentation (which includes

23    complaints about treatment, administrative appeals, correspondence, and personal papers) total

REPORT AND RECOMMENDATION - 3

1   489 pages. Dkt. 19. His original motion and documentation for a TRO and a PI total 428 pages,

2   Dkt. 5; his second motion and documentation for a TRO and a PI total 96 pages, Dkt. 16; and

3   both motions ask that defendants be prohibited from interfering in any way with his person,

4   property, or papers and to transfer him to a lower-security setting. Much of the supporting

5   documentation appended to the Amended Complaint and to the motions for injunctive relief is

6   duplicative. *See* Dkts. 5, 16, 19.

7                                      **DISCUSSION**

8           In a 24-page order, the Court declined to serve Plaintiff's original complaint for failure to

9   state a claim upon which relief could be granted and detailed the complaint's fatal deficiencies.

10  Dkt. 11. Plaintiff has failed to correct these pleading deficiencies in his Amended Complaint.

11  Dkt. 19. The Court therefore recommends declining to serve and **DISMISSING** the Amended

12  Complaint with prejudice for failure to state a claim upon which relief may be granted because

13  any further amendment would be futile. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1). The

14  Court recommends declining to exercise supplemental jurisdiction over Plaintiff's state

15  constitutional claim because Plaintiff's federal claims are not plausible. The Court recommends

16  **DENYING** Plaintiff's motions for a TRO and a PI. Dkts. 5, 16.

17  **I.      Failure to State a Claim**

18          The Court must screen complaints brought by prisoners seeking relief against state actors.

19  28 U.S.C. § 1915A(a). The Court must "dismiss the complaint, or any portion of the complaint,

20  if the complaint: (1) is frivolous, malicious, or fails to state a claim upon which relief may be

21  granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28

22  U.S.C. §1915A(b); 28 U.S.C. § 1915(e)(2); *see Barren v. Harrington*, 152 F.3d 1193 (9th Cir.

23  1998).  Prisoners proceeding *pro se* in civil rights actions are entitled to have their pleadings

liberally construed and to have any doubt resolved in their favor. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted); *Moss v. United States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show: (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The first step in a § 1983 claim is therefore to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). To satisfy the second prong, a plaintiff must allege facts showing how individually named defendants caused, or personally participated in causing, the harm alleged in the complaint. *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988); *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). To be liable for "causing" the deprivation of a constitutional right, the particular defendant must commit an affirmative act, or omit to perform an act, that he or she is legally required to do, and which causes the plaintiff's deprivation. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). Defendants in a § 1983 action cannot be held liable based on a theory of respondeat superior or vicarious liability. *Polk City v. Dodson*, 454 U.S. 312, 325 (1981); *Monell v. New York City Dep't of Soc. Serv.*, 436 U.S. 658, 694 n.58 (1978). A supervisor is only liable for constitutional violations of subordinates if the supervisor participated in or directed the

1   violations, or knew of the violations and failed to act to prevent them. *Taylor v. List*, 880 F.2d

2   1040, 1045 (9th Cir. 1989). Vague and conclusory allegations of official participation in civil

3   rights violations are not sufficient to state a claim of relief. *Pena v. Gardner*, 976 F.2d 469, 471

4   (9th Cir. 1992). Federal statutory and constitutional claims for money damages are barred against

5   state officials sued in their official capacities on the basis of Eleventh Amendment state

6   sovereign immunity.[2] *Dittman v. California*, 191 F.3d 1020, 1026–27 (9th Cir. 1999). Eleventh

7   Amendment immunity does not, however, bar "suits for prospective declaratory and injunctive

8   relief against state officers, sued in the official capacities, to enjoin an alleged ongoing violation

9   of federal law." *Agua Caliente Band of Cahuilla Indians v. Hardin*, 223 F.3d 1041, 1045 (9th

10  Cir. 2000) (citing the *Ex parte Young* doctrine, 209 U.S. 123 (1908)).

11          Plaintiff's claims are convoluted and overlapping. The Court therefore attempts to discern

12  what claims Plaintiff raises against Defendants with reference to the claimed violations of federal

13  law: (1) his First Amendment claim of retaliation; (2) his Eighth Amendment claim of deliberate

14  indifference to serious medical needs; (3) his Fourteenth Amendment rights to due process and

15  equal protection;[3] (4) his ADA claim; and (5) his PREA claim. The Court finds that Plaintiff has

16  failed to state a claim upon which relief may be granted and that Defendants, sued in their

17  official capacities, are immune from suit with respect to monetary damages due to Eleventh

18  Amendment state sovereign immunity with regard to all but the ADA claim. The Court finds that

19

20  [2] State sovereign immunity does not, however, bar a claim for money damages against
    Defendants sued under the ADA because Congress clearly intended to abrogate state immunity
21  under Title II of the ADA. *Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1185 (9th Cir. 2003).

22  [3] The Fourteenth Amendment's Due Process Clause applies to the state government while the
    Fifth Amendment Due Process Clause applies to the federal government. The Court presumes
23  that by invoking the Fifth Amendment, Plaintiff was referring to due process because he does not
    appear to invoke other Fifth Amendment rights that might apply to Defendants via the
    Fourteenth Amendment.

1   Plaintiff is nonetheless not entitled to a TRO, a PI, and declaratory or prospective relief due to

2   failure to show likelihood of success on the merits or that he would suffer irreparable harm. The

3   Court finds that exercising supplemental jurisdiction over Plaintiff's assertion of a state

4   constitutional violation is not necessary and does not address state law because Plaintiff has

5   raised no cognizable federal claim.

6       **A. First Amendment Retaliation**

7           Plaintiff contends that all Defendants violated the First Amendment by retaliating against

8   him for complaining about improper infractions and utilizing the prison grievance process

9   through infracting him unfairly and issuing unfavorable decisions throughout the disciplinary

10  process. The Court finds that Plaintiff fails to state a plausible retaliation claim against any of the

11  Defendants.

12          To prevail on a retaliation claim, a plaintiff must allege and prove a defendant retaliated

13  against him for exercising a constitutional right and the retaliatory action did not advance

14  legitimate penological goals or was not narrowly tailored to achieve such goals. *Hines v. Gomez*,

15  108 F.3d 265, 267 (9th Cir. 1997). A prisoner suing a prison official under § 1983 for retaliation

16  for engaging in protected speech must allege "the type of activity he engaged in was protected

17  under the first amendment and that the state impermissibly infringed on his right to engage in the

18  protected activity." *Rizzo v. Dawson,* 778 F.2d 527 (9th Cir. 1983)*.* To establish a retaliation

19  claim, an inmate must show: (1) a state actor took some adverse action against the inmate;

20  (2) because the inmate engaged in constitutionally protected conduct; (3) the adverse action

21  chilled the inmate's exercise of First Amendment rights; and (4) the adverse action did not

22  reasonably advance a legitimate correctional goal. *Rhodes v. Robinson,* 408 F.3d 559, 567–68

23  (9th Cir. 2005).

On pages 15–22, Plaintiff alleges that Defendants Peterson, Heuer, and Kirby improperly told him that he could not use his designated restroom (Tier #4) after count had been conducted and then infracted Plaintiff so that he was subsequently punished by Defendant Fredrickson from October 25, 2021 to December 28, 2021. Dkt. 19, at 15–16. Plaintiff also alleges that Defendant Peterson, alongside Defendant Kirby, retaliated and maliciously harassed Plaintiff by infracting him because he had previously complained and filed appeals regarding Defendant Peterson, Defendant Kirby, Defendant Heuer, and Defendant Cohn from November 2021 to December 28, 2021. Dkt. 19, at 16–17. According to Plaintiff, he should have been allowed to use the restroom after the count had been conducted and the staff exited the tier because it was improper to ignore his ADA-covered weak bladder and pain from hernia surgery and to enforce a rule that he could not use the restroom until the prison count had been announced clear, which meant waiting twenty minutes or longer. Dkt. 19, at 17. Plaintiff then alleges that Defendants Peterson, Heuer, Kirby, Cohn, and Olmsted-Fredrickson violated his rights and retaliated against him by improperly infracting him and improperly resolving his complaints, which led him to be placed in segregation, losing custody points, and being transferred to medium custody when the infractions were improperly upheld. Dkt. 19, at 18–20. Plaintiff appears to suggest that Defendant Olmsted-Fredrickson retaliated against him prior to and during his disciplinary hearing in January 2022 by not allowing him to submit a witness questionnaire to Defendant Peterson. Dkt. 19, at 20–21.

Plaintiff's allegations against Defendants Peterson, Heuer, Kirby, Cohn, and Olmsted-Fredrickson fail to state a plausible retaliation claim. Plaintiff alleges he was targeted with reprisals and harassment by these Defendants by being infracted for violations of prison policy. Nevertheless, his supporting documentation demonstrates that he was not engaged in

constitutionally protected conduct by being out-of-bounds during prison counts, he was able to exercise his First Amendment rights by filing multiple grievances that were addressed at multiple levels of the administrative process, and he fails to state facts indicating that the negative behavioral reports against him lacked the legitimate correctional goal of ensuring the safety and security of the facility. For example, incident reports and investigations from November 2021 to January 2022 demonstrate that Plaintiff was repeatedly told it was against prison rules for him to be in the restroom before count had been cleared, that he had not properly requested permission to use the restroom during count, and had never submitted a Health Status Report or sought authorization/accommodation from a health care provider for such an exception to the rules. *See, e.g.*, Dkt. 19, at 44, 84. Similarly, it does not constitute retaliation or harassment for Defendant Peterson to have, for example, infracted Plaintiff for violating prison rules by leaving his unit to retrieve hot water in another unit without authorization and without having sought to retrieve hot water from his own unit. Dkt. 19, at 51.

      On pages 22–26, Plaintiff focuses on retaliation by Defendant Posabella and others with whom she was "in cahoots": Defendants Peterson, Olmsted-Fredrickson, Kirby, and Cohn. According to Plaintiff, Defendant Posabella cited him for being out-of-bounds when he exited his tier to use the ice machine and water faucet in another unit's hallway on January 6, 2022. Dkt. 19, at 22–26. Plaintiff asserts that Defendant Posabella—"in cahoots" with Defendants Harvold, Cannon, Cohn, and Peterson—also unfairly infracted him for attempting to use another tier's restroom during count, leading to Defendant Cannon being verbally abusive and disrespectful and causing Plaintiff to urinate on himself, apparently during a September 10, 2022 incident. Dkt. 19, at 24. Due to these inappropriate infraction reports, Plaintiff contends that he was inappropriately subjected to cell confinement by Defendant Ewing, and had his

1    disability/medical needs related to his hernia surgery treated with deliberate indifference by all

2    involved prison officials. Dkt. 19, at 25.

3    　　　Plaintiff fails to raise a plausible claim that Defendant Posabella infracted him as part of a

4    retaliatory conspiracy because he engaged in constitutionally protected conduct, had his First

5    Amendment rights violated by not being able to transgress prison rules regarding restrictions on

6    where and when inmates can move between areas or during counts, and he does not plausibly

7    allege sufficient facts to demonstrate that the generally applicable rules did not reasonably

8    advance a legitimate correctional goal. Dkt. 19, at 22–26. Plaintiff thus fails to state a First

9    Amendment retaliation claim against Defendant Posabella or any of the Defendants who relied

10   upon Defendant Posabella's infraction reports. *Id.*

11   　　　In pages 26–27, Plaintiff contends that Defendants Kirby, Harvold, and Cohn retaliated

12   against him by refusing to allow Plaintiff to use the restrooms on Tier 3 A-Unit and Tier 4 D-

13   Unit from October 19, 2021 to January 10, 2022; and by intentionally neglecting his physical

14   disability/hernia and weak bladder from August 8, 2022 to November 21, 2022. Dkt. 19, at 26.

15   　　　Plaintiff cannot raise a plausible claim that Defendants Kirby, Harvold, and Cohn

16   retaliated against him by citing him for clear, repeated violations of prison rules regarding

17   restricting restroom access prior to a prison count being cleared, that his First Amendment rights

18   were impinged, or that enforcement of these generally applicable restrictions had no legitimate

19   penological purpose. Moreover, Plaintiff's own attachments and assertions demonstrate that

20   Plaintiff never provided to Defendants statements or recommendations by medical personnel to

21   support any necessary accommodations for Plaintiff's self-proclaimed disability. *See* Dkt. 19, at

22   44, 442.

23

REPORT AND RECOMMENDATION - 10

1          On pages 27–29, Plaintiff contends that Defendants Heib, Stemler, and Peterson

2    retaliated against him by falsifying infraction reports, refusing to process multiple prior

3    submitted grievances against themselves and colleagues, and misuse of the disciplinary process

4    on various dates throughout 2021 and 2022. Dkt. 19, at 27–29. Plaintiff's allegations are

5    conclusory and implausible in light of the supporting documentation that demonstrates repeated

6    investigation of Plaintiff's grievances upon reporting and on appeal. For example, Defendants

7    Hearing Officer Ewing and Associate Superintendent Chandler determined that Plaintiff was

8    guilty of abusing the resolution process by having seven active resolution requests when the limit

9    was five but was not guilty of Defendant Heib's allegation that such behavior demonstrated a

10   pattern of abuse. Dkt. 19, at 308–09. That Plaintiff does not agree with the conclusions of the

11   disciplinary proceedings does not in and of itself raise a plausible claim of retaliation.

12   "Furthermore, an individual defendant is not liable under § 1983 unless the facts establish the

13   Defendant's personal involvement in the constitutional deprivation or a causal connection

14   between the defendant's acts and the constitutional deprivation." *Sasser v. Lizaragga*, No. 2:17-

15   CV-2531 AC P, 2020 WL 6293146, at *4 (E.D. Cal. July 14, 2020), *report and recommendation*

16   *adopted*, No. 2:17-CV-02531-TLN-AC, 2020 WL 6286326 (E.D. Cal. Oct. 27, 2020) (citing

17   *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th

18   Cir. 1978)). "Ruling against a prisoner on an administrative complaint [generally] does not cause

19   or contribute to the [constitutional] violation. A guard who stands and watches while another

20   guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint

21   about a completed act of misconduct [generally] does not." *George v. Smith*, 507 F.3d 605, 609-

22   10 (7th Cir. 2007) (finding that only people who cause or participate in constitutional

23   violations are responsible).

On pages 29–30, Plaintiff alleges that Defendants Chandler and Padilla retaliated against him by "affirming guilty decisions" during the disciplinary proceedings. Again, the fact that Defendants Chandler and Padilla did not find in his favor during disciplinary proceedings does not imply that they retaliated against him by sanctioning protected conduct, squelching his First Amendment rights, or failing to demonstrate a valid penological reason for reviewing the evidence and reaching the conclusions they did.

On pages 30–33, Plaintiff alleges that Defendants O'Connor, Smith, Hathaway, Jackson, White, and Strange retaliated against him when they supported and refused to apply any corrective measures regarding any of the malfeasance set forth in the Amended Complaint. Dkt. 19, at 30–33. There is no respondeat superior liability under § 1983, and Plaintiff has failed to allege how Defendants O'Connor, Smith, Hathaway, Jackson, White, and Strange participated in or directed violations, or knew of the violations and failed to act to prevent them. *See Polk City*, 454 U.S. at 325; *Taylor*, 880 F.2d at 1045. Such conclusory allegations are not sufficient to state a claim of relief. *See Pena*, 976 F.2d at 471.

Plaintiff fails to state a plausible claim of First Amendment retaliation against any of the Defendants.

**B. Eighth Amendment Deliberate Indifference/Conditions of Confinement**

Plaintiff alleges that all Defendants violated the Eighth Amendment, presumably for their roles in not permitting him to utilize restroom facilities before a prison count is cleared. Dkt. 19, at 16–33.[4] The Court finds that Plaintiff has failed to state a plausible Eighth Amendment claim

---

[4] Plaintiff specifically refers only to his restroom requests when summarizing his Eighth Amendment claim. Dkt. 19, at 33.

1    for deliberate indifference to serious medical needs or an extreme deprivation related to his

2    conditions of confinement.

3        Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary

4    and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citation

5    omitted); *see Hudson v. McMillan*, 503 U.S. 1, 6 (1992). An Eighth Amendment medical claim

6    has two elements: (1) "the seriousness of the prisoner's medical need and [(2)] the nature of the

7    defendant's response to that need." *McGuckin v. Smith,* 974 F.2d 1050, 1059 (9th Cir.1991),

8    *overruled on other grounds by WMX Techs., Inc. v. Miller,* 104 F.3d 1133 (9th Cir.1997) (en

9    banc). A medical need is serious "if the failure to treat the prisoner's condition could result in

10   further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974

11   F.2d at 1059 (*quoting Estelle*, 429 U.S. at 104). "The existence of an injury that a reasonable

12   doctor or patient would find important and worthy of comment or treatment; the presence of a

13   medical condition that significantly affects an individual's daily activities; or the existence of

14   chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for

15   medical treatment." *Id.* at 1059-1060. If a plaintiff shows he suffered from a serious medical

16   need, he must then show the prison officials responded to the need with deliberate indifference.

17   *See Farmer*, 511 U.S. at 834. Deliberate indifference to a prisoner's serious medical need

18   requires "a purposeful act or failure to act on the part of the defendant." *McGuckin*, 974 F.2d at

19   1060. In other words, "[a] defendant must purposefully ignore or fail to respond to a prisoner's

20   pain or possible medical need." *Id*. A prison official, accordingly, will not be found deliberately

21   indifferent to a prisoner's serious medical needs "unless the official knows of and disregards an

22   excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. "[T]he official must both be

23   aware of facts from which the inference could be drawn that a substantial risk of serious harm

1    exists, and he must also draw the inference." *Id.* Furthermore, prison officials must provide

2    prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. *Wright v.*

3    *Rushen,* 642 F.2d 1129, 1132-33 (9th Cir. 1981) (quoting *Wolfish v. Levi,* 573 F.2d 118, 125 (2d

4    Cir. 1978)). "What is necessary to show sufficient harm for purposes of the Cruel and Unusual

5    Punishment Clause depends upon the claim at issue." *Hudson v. McMillian*, 503 U.S. 1, 8

6    (1992). "The objective component of an Eighth Amendment claim is...contextual and responsive

7    to 'contemporary standards of decency.'" *Id.* (quoting *Estelle*, 429 U.S. at 103). "[E]xtreme

8    deprivations are required to make out a[n] [Eighth Amendment] conditions-of-confinement

9    claim." *Id.* at 9.

10       Plaintiff states that he has a hernia and he takes medications that cause him

11   "uncontrollable urination and bowel movements." Dkt. 19, at 17. He alleges it is thus sometimes

12   difficult for him to wait the approximate 20 minutes until count is announced "clear" to use the

13   restroom. *Id.* Plaintiff alleges he informed Defendants Peterson, Kirby, Heuer, and Cohn of this

14   concern from October 2021 to December 2021, and that they responded that "they did not care

15   about his A.D.A. (weak bladder) or his hernia physical pain" and Plaintiff would have to wait the

16   20 or so minutes until count was announced "clear." *Id.*; *see* Dkt. 19, at 20. As a result, Plaintiff

17   alleges that on an unspecified date, presumably in 2021, he "used the restroom on himself" and

18   told an unspecified three of four officers (Peterson, Kirby, Heuer, and Cohn) "that this was

19   happening to himself," but that they did not care. Dkt. 19, at 17. Nevertheless, Plaintiff also

20   acknowledges in his supporting documentation that Defendant Kirby informed him he could

21   request the prison medical clinic providers issue a Health Status Report or an Accommodation

22   Status Report to allow him to use the Tier #4 restroom before count was announced "clear." Dkt.

23   19, at 44. Plaintiff fails to show he made any effort to obtain such a Health Status Report or

1  Accommodation Status Report. *Id.* Plaintiff also alleges that other Defendants also were

2  deliberately indifferent to his urgent need to use the restroom, including Defendant Olmsted-

3  Fredrickson by finding against him during disciplinary proceedings, Dkt. 19, at 20–22;

4  Defendant Posabella "in cahoots" with Defendants Harvold, Cannon, Cohn, and Peterson in

5  September 2022, Dkt. 19, at 25; and Defendants Kirby, Harvold, and Cohn at various times from

6  October 2021 to January 2022, and from August 2022 to November 2022, Dkt. 19, at 26–27.

7  Nevertheless, Plaintiff submits supporting documentation that shows that although he filed fully

8  adjudicated claims for a year to correctional officers about his right to use a restroom whenever

9  requested, even in October 2022 Plaintiff had never sought an ADA accommodation or

10  submitted a Health Status Report that might justify an exception to be made during prison counts

11  to use the restroom. Dkt. 19, at 442 (Letter from Erik L. Jackson, DOC Deputy Assistant

12  Secretary, dated October 4, 2022). In November 2022, Defendant Jackson sent a letter

13  addressing Plaintiff's complaints that he should be afforded unfettered access to the restroom

14  during prison counts:

15
16  > In accordance with DOC Policy DOC 420.150 *Counts*, page 3 of
   > 8B[,] "Offenders will not move during count unless it is emergent
   > and authorized by the Shift Commander. All offenders will be in
17  > their cell, room, or bunk area (i.e., in dormitory settings) for count,
   > except for approved out counts." In review of your OMNI, you
18  > currently live in a dormitory setting and per policy are to remain in
   > your bunk area. As the restroom is not in your bunk area, you must
   > receive permission to use the restroom prior to count clearing.
19
20  Dkt. 19, at 427. Although an inmate may seek permission to use the restroom during an extended

21  count, records indicated that Plaintiff sought to utilize the restroom less than 20 minutes after the

22  outset of a non-extended count. *Id.* This was so despite, contrary to Plaintiff's assertion,

23  "[r]ecords indicate that you do not have a current disability. This information was verified

through medical on September 16, 2022 and entered into OMNI." Dkt. 19, at 428.

REPORT AND RECOMMENDATION - 15

1          Plaintiff makes no plausible claim that Defendants have been deliberately indifferent to

2    his serious medical needs; rather, he alleges that Defendants should have accommodated a self-

3    described, but never medically verified, need to use the restroom at any time, including the

4    approximate 20 to 30 minutes for clearing a prison count. Plaintiff acknowledges that he was

5    transferred from Washington Correctional Complex to MCC in October 2021 so that he could

6    receive hernia surgery and that his condition was being managed via the use of medication. Dkt.

7    19, at 7, 17. There is no indication, however, that a medical provider has ever opined that

8    Plaintiff must use the restroom with greater frequency than do other inmates. His supporting

9    documentation also makes clear that for over a year he declined to provide Defendants with any

10   indication from treatment providers that his urgency to urinate or defecate precluded him from

11   remaining without restroom access during the 20 to 30 minutes necessary to clear a prison count.

12   Dkt. 19, at 44, 144. For example, there is no indication in the Amended Complaint or supporting

13   documentation that Plaintiff plans in advance for a prison count by using the restroom shortly

14   before the beginning of a count instead of requesting to leave, or simply leaving, *during* the

15   prison count. *See, e.g.*, Dkt. 19, at 266 (Non-Defendant Correctional Officer Robert Quimby's

16   statement that on Sept. 10, 2022, "I advised Offender Slaughter that Formal Count is at 15:50

17   each and every day[,] why didn't you use the restroom prior to Count in which he aggressively

18   replied[,] 'I'll just file an emergency Grievance on you then.'"). Moreover, in a health services

19   kite, Plaintiff acknowledged that *medical providers* repeatedly declined to permit him access to

20   the restroom at-will because there was no medical reason to make such an allowance: "On 9-19-

21   22, you responded to my medical kite dated on[] []9-9-22,[] that was regarding my 'request for

22   my H.S.R. for restroom use as needed, to be renewed…' you asserted, 'like [Physician's

23

1    Assistant] Bo[] Stansbury, 'it[']s not medically necessary or a medical diagnosis.'" Dkt. 19, at

2    152.

3        Plaintiff fails to allege sufficient facts suggesting that Defendants were aware of a

4    substantial risk of harm yet deliberately ignored or failed to reasonably respond to the risk,

5    causing Plaintiff harm. Plaintiff therefore fails to raise a plausible claim that Defendants were

6    deliberately indifferent to a serious medical need. *See Frost v. Agnos*, 152 F.3d 1134, 1129 (9th

7    Cir. 1998) (prison officials were deliberately indifferent where they knew plaintiff fell several

8    times using crutches in the shower and did not provide accommodations); *Adams v. Schwartz*,

9    2008 WL 544390 at *8 (E.D. Cal. Feb. 26, 2008) (finding plaintiff had not shown defendants

10   were aware of a risk of harm to plaintiff by way of, for example, previous falls or earlier

11   grievances). Although Plaintiff submitted grievances regarding the restroom issue for over a

12   year, the resolution of those grievances repeatedly indicated that Plaintiff has no disability

13   requiring more frequent, urgent access to a restroom and that Plaintiff has never provided

14   Defendants with support from medical providers or the medical record that such restroom access

15   was required.

16       To the extent Plaintiff alleges that all Defendants violated his Eighth Amendment rights

17   via fabricating infractions, failing to redress them through the grievance process, or an extreme

18   deprivation in prison conditions that amounts to cruel and unusual punishment, those entirely

19   conclusory allegations fail to state an Eighth Amendment claim because they are vague and

20   overbroad. *See* Dkt. 19, at 15–33. Plaintiff has failed to raise any plausible claim for an Eighth

21   Amendment violation against Defendants.

22

23

REPORT AND RECOMMENDATION - 17

1     **C. Fourteenth Amendment Due Process and Equal Protection**

2         Plaintiff alleges that all Defendants violated his Fourteenth Amendment right to due

3 process of the law, presumably related to the manner in which disciplinary proceedings were

4 handled, infractions were fabricated, and limitations on Plaintiff being able submit a

5 questionnaire to Defendant Peterson during proceedings, to access video footage, or to grieve

6 more than five incidents simultaneously. Dkt. 19, at 15–33. The Court finds that his challenges to

7 those proceedings that resulted in a loss of good-time credits are *Heck*-barred and that Plaintiff

8 has failed to raise a plausible deprivation of his due process rights with regards to the other

9 challenges. The Court finds Plaintiff's allegations of racial discrimination in violation of the

10 Equal Protection Clause to be conclusory, vague, and implausible.

11         *Heck v. Humphrey,* 512 U.S. 477 (1994), "precludes a prisoner's § 1983 claim that, if

12 successful, would invalidate a conviction or sentence 'where that conviction [or sentence] has

13 not been reversed, expunged or called into question by issuance of a writ of habeas

14 corpus.'" *Butterfield v. Bail*, 120 F.3d 1023, 1024 (9th Cir. 1997) (quoting *Smithart v.*

15 *Towery,* 79 F.3d 951, 952 (9th Cir. 1996) (citing *Heck,* 512 U.S. at 486–87)). *Heck* also applies

16 to bar § 1983 claims challenging prison disciplinary proceedings in some contexts. *See Edwards*

17 *v. Balisok*, 520 U.S. 641 (1997); *Butterfield v. Bail*, 120 F.3d 1023, 1024 (9th Cir. 1997).

18 Specifically, if the court concludes that a challenge to a disciplinary proceeding's procedures or

19 substantive outcome would necessarily imply the invalidity of the judgment resulting in the

20 denial of good-time credits, then the challenge must be brought as a petition for a writ of habeas

21 corpus, not under § 1983. *Butterfield*, 120 F.3d at 1024 (citing *Edwards*, 520 U.S. 641).

22 Plaintiff's claimed violations of due process related to any proceedings that resulted in the loss of

23 good-time credits are therefore *Heck*-barred and should be raised via a petition for habeas

1    corpus. These include his challenges to the loss of good time credits in disciplinary proceedings

2    against Defendants Peterson, Heuer, Kirby, Cohn, and Olmsted-Fredrickson (Dkt. 19, at 15–20),

3    Defendant Posabella and other Defendants with whom she was "in cahoots" (Dkt. 19, at 22–26),

4    Defendants Heib, Stemler, and Peterson (Dkt. 19, at 27–29), and Defendants O'Connor, Smith,

5    Hathaway, Jackson, White, and Strange (Dkt. 19, at 30–33); and with respect to any disciplinary

6    proceedings resulting in the loss of good time proceedings (*see generally* Dkt. 19, at 15–33). *See,*

7    *e.g.*, Dkt. 19, at 174–75 (summary of all good conduct time lost).

8         Plaintiff also raises a due process challenge regarding all Defendants' participation in

9    unfavorable disciplinary proceedings that resulted in other sanctions, such as change of plan

10   custody classification, demotion of his security status back to medium, being placed in cell

11   confinement, and being transferred between MCC units. *See, e.g.*, Dkt. 19, at 28. Plaintiff also

12   raises a due process challenge regarding his access to video footage that might corroborate his

13   account of events, the refusal to allow him to have Defendant Peterson respond to a

14   questionnaire during disciplinary proceedings, loss of his job within MCC, and access to

15   incentive programs and other privileges. *See, e.g.*, Dkt. 19, at 28–29.

16        With respect to Plaintiff's due process claims of being placed on temporary cell

17   confinement, being demoted from minimum security to medium security, being transferred to a

18   different unit within MCC, or losing other privileges, Plaintiff does not appear to be challenging

19   a cognizable liberty interest protected by the Due Process Clause. Under the Fourteenth

20   Amendment's Due Process Clause, a prisoner is entitled to certain due process protections when

21   he or she is charged with a disciplinary violation. *Wolff v. McDonnell*, 418 U.S. 539, 564–571

22   (1974). Such protections include the rights to call witnesses, to present documentary evidence

23   and to have a written statement by the factfinder as to the evidence relied upon and the reasons

for the disciplinary action taken. *Id.* These procedural protections adhere, however, only when the disciplinary action implicates a protected liberty interest in some "unexpected matter" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The Due Process Clause alone does not confer a liberty interest in freedom from the conditions or degree of confinement ordinarily contemplated by a prison sentence. *See Hewitt v. Helms*, 459 U.S. 460, 466-68 (1983) (superseded by statute on other grounds). Rather than relying on a single indicator of atypical and significant hardship, courts conduct a "case by case, fact by fact" analysis of the "condition or combination of conditions or factors" that the plaintiff experienced. *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003) (citing *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996)). Although the significance of the hardship is a case-by-case determination, courts look to certain "guideposts," including:

> 1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence.

*Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003) (quoting *Sandin*, 515 U.S. at 486-87). If an inmate has a protected liberty interest or "[i]f the hardship is sufficiently significant, then the court must determine whether the procedures used to deprive that liberty satisfied Due Process." *Ramirez*, 334 F.3d at 860.

Plaintiff's supporting documentation confirms sanctions/responses such as being told not to have any out-of-bounds violations for 30 days (Dkt. 19, at 68); being found not suitable for camp setting and being demoted to medium security and transferred to another unit (Dkt. 19, at 177); not accepting more than five active resolution requests simultaneously due to generally

REPORT AND RECOMMENDATION - 20

1    applicable prison rules (Dkt. 19, at 250, 318); and two or three days confinement to his cubicle

2    (Dkt. 19, at 276, 297). Plaintiff does not allege a protected liberty interest occurring in an

3    unexpected manner or a sufficiently atypical, significant hardship that would require the Court to

4    evaluate whether the procedures used satisfied Due Process. *See Sandin*, 515 U.S. at 485

5    (holding that prison-imposed discipline of 30 days "in segregated confinement did not present

6    the type of atypical, significant deprivation in which a State might conceivably create a liberty

7    interest"). Nevertheless, the Ninth Circuit has noted that even in the absence of a liberty interest

8    cognizable under the Due Process Clause, some minimal procedural safeguards still apply to

9    inmate disciplinary proceedings. *Burnsworth v. Gunderson*, 179 F.3d 774–75 (1999). "[T]he

10   fundamental principle of due process in prison disciplinary hearings [is] 'the minimum

11   requirements of procedural due process' require that 'the findings of the prison disciplinary

12   board [be] supported by some evidence in the record.'" *Id.* at 775 (quoting *Superintendent v.*

13   *Hill*, 472 U.S. 445, 454–55 (1985)). The supporting documents attached to the Amended

14   Complaint demonstrate that Defendants and the MCC provided more than "some evidence" to

15   support the sanctions for Plaintiff's numerous infractions. For example, in responding to

16   Plaintiff's appeal letter regarding several December 2021 infractions and Plaintiff's accusations

17   that he should have been provided surveillance videos, was denied witness statements from

18   infracting staff, and was not notified of appeal options, DOC Prison Disciplinary Manager

19   Michael Hathaway summarized as follows:

20           In all three infractions, you were: 1) provided with written
             notification of the violation, at least 24 hours prior to the hearing,
21           2) afforded the opportunity to request witness statements, a staff
             advisor or interpreter, 3) provided a written decision/sanctions and
22           the information relied upon, and 4) had an impartial DHO
             [Disciplinary Hearing Officer] conduct the hearing. I reviewed the
23           infraction packets and see that the additional questions you posed
             for CUS Kirby and CC3 Burns were responded to by both, but the

REPORT AND RECOMMENDATION - 21

1
2
3
4
5
6
7

> questions for Officer Peterson were denied by the DHO because they determined that you were attempting to cross-examine her. The DHO has discretion to review your witness requests and questions to determine if they are irrelevant, duplicative, unnecessary, or hazardous. Incarcerated Individuals are not authorized [to] examine physical, view video evidence or cross examine witnesses. You are notified of this every time you are served an infraction via the Disciplinary Hearing Notice (05-093). It also appears that you are aware of your appeal options as you have submitted multiple appeals within the established timeframes. I have found no evidence to support that staff writing current infractions based on your behaviors are retaliating against you for previous complaints you lodged seven years ago.

8  Dkt. 19, at 389. Moreover, even if Plaintiff were afforded the full protection of the Due Process

9  Clause for a presumably protected liberty interest, he has failed to allege plausible allegations

10  that he was deprived such rights as the ability to call witnesses, to present documentary evidence

11  and to have a written statement by the factfinder as to the evidence and rationale relied upon. If

12  anything, the voluminous documents Plaintiff has appended to his Amended Complaint

13  demonstrate that Plaintiff's due process rights have been meticulously addressed.

14       According to Plaintiff, Defendants also discriminated against him in violation of equal

15  protection by not allowing him access to the restroom before the prison count cleared. Dkt. 19, at

16  17. This constituted racial discrimination, Plaintiff argues, because Defendant Peterson did not

17  enforce such a rule against others of her own race, and there were no penological interests in

18  enforcing a rule that would force him to hold his bladder and bowel movements even through his

19  hernia pain. *Id.* Plaintiff's allegation of racial discrimination is conclusory and implausible

20  because Plaintiff does not suggest how Defendants by enforcing a general rule applicable to all

21  inmates on the basis of safety evinced discrimination against him entirely because Defendant

22  Peterson is of a different race from Plaintiff. A claim of racial discrimination under the Equal

23  Protection Clause requires a showing of discriminatory intent. *Washington v. Davis*, 426 U.S.

229, 239–40 (1976). In addition, the claim must be rejected if, as is the case here, the prison

regulation or practice claimed to have infringed on an inmate's constitutional rights is

"reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987);

*see also Washington v. Harper*, 494 U.S. 210, 223–25 (1990) (standard of review adopted in

*Turner* applies in all circumstances in which needs of prison administration implicate

constitutional rights, including when the constitutional right claimed to have been infringed is

fundamental or a suspect class is involved). There is no plausible suggestion, for example, that

any particular inmate of a different race sought restroom access during the prison count and was

permitted such access.

Plaintiff's allegations regarding a deprivation of due process that stem from a challenge

to disciplinary proceedings that resulted in the loss of good-time credits are *Heck*-barred.

Plaintiff has also failed to raise plausible allegations of a due process deprivation or an equal

protection violation with respect to any of the Defendants in any other regard.

### D. ADA Violation Regarding Using Restroom During Prison Count

Plaintiff alleges violations of the ADA by several Defendants. These allegations relate to

how Plaintiff was not permitted to leave his cell, including to use the restroom, per unit rules,

until count was conducted and announced "clear." Plaintiff alleges this required him to wait 20

minutes or more to use the restroom while count was conducted and announced "clear."

Plaintiff fails to state an ADA claim against Defendants sued in their individual

capacities because individual liability is precluded under the ADA. *Stewart v. Unknown Parties*,

483 F. App'x 374, 374 (9th Cir. 2012) (citing *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir.

2002)); *see also Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn,* 280 F.3d 98, 107 (2d Cir.

2001) (Title II of the ADA does not provide for individual capacity suits against state officials.).

To bring ADA claims against Defendants in their official capacities, the ADA provides a "qualified individual with a disability" cannot, "by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "To state a claim of disability[5] discrimination under Title II [of the ADA], the plaintiff must allege four elements: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability." *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). In order to recover money damages under Title II, a plaintiff must prove that he was discriminated against intentionally and the Ninth Circuit uses the "deliberate indifference standard." *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138–39 (9th Cir. 2001). To prove intentional discrimination, Plaintiff must show: 1) that a public entity had knowledge that a violation of his rights under the ADA was substantially likely to occur; and 2) at a minimum, the public entity failed to act. *Lovell v. Chandler*, 303 F.3d 1039, 1056 (9th Cir. 2002).

---

[5] The term "disability" under the ADA means, "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3))." 42 U.S.C. § 12102(1). Major life activities include, but are not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2).

1    Here, Plaintiff fails to allege sufficient facts showing any Defendants discriminated

2 against him **on the basis of** his alleged disability. "The ADA prohibits discrimination *because of*

3 disability, not inadequate treatment for disability." *Simmons v. Navajo Cty*, 609 F.3d 1011, 1022

4 (9th Cir. 2010) (emphasis added) (citing *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996)

5 ("[T]he Act would not be violated by a prison's simply failing to attend to the medical needs of

6 its disabled prisoners.... The ADA does not create a remedy for medical malpractice.'"));

7 *Weinreich v. Los Angeles Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997) ("The

8 duty to provide 'reasonable accommodations' under the ADA and the Rehabilitation Act arises

9 only when a policy discriminates *on the basis of disability.*"); *see Manning v. Quick*, 2017 WL

10 3034624, at *6 (D. Colo. July 18, 2017) (plaintiff's allegation "that she was forced to climb

11 stairs. . . . without an allegation of a discriminatory motive, and without a showing that she was

12 denied access to prison programs, does not state an ADA claim"); *see also Sims v. Clarke*, 2019

13 WL 1447484, at *5 (W.D. Va. Mar. 31, 2019) (dismissing ADA claims where plaintiff did not

14 allege "defendants' denial of a prosthetic leg or a larger cell was the denial of a prison service,

15 program, or activity or that the denial of these things was based on his disability"). Plaintiff's

16 supporting documentation establishes that Plaintiff was restricted from restroom use during the

17 prison count by a rule generally applicable to all inmates, that prison officials were not aware

18 that Plaintiff had a disability, that Plaintiff's prison record established that he had no disability,

19 and that he failed to offer support from medical providers that he needed an accommodation to

20 use the restroom at any time. *See, e.g.*, Dkt. 19, at 44, 84, 428. Thus, Plaintiff has failed to state a

21 claim under Title II of the ADA against Defendants sued in their official capacities.

22    **E.  PREA Regarding Female Defendant Peterson Entering Restroom**

23

1    Plaintiff alleges a PREA violation because Defendant Peterson, a female officer, did not

2    press the female button at the restroom entrance, instead bursting into the restroom, viewing his

3    genitals, and telling him "you[']r[e] out-of-bounds." Dkt. 19, at 18. The PREA "'authorizes the

4    reporting of incidents of rape in prison, allocation of grants, and creation of a study commission,'

5    but there is nothing in the PREA to indicate that it created a private right of action, [or that it is

6    otherwise] enforceable under § 1983." *Watkins v. Tuolumne County Jail*, 2019 WL 95508, at *3

7    (E.D. Cal. Jan. 3, 2019) (quoting 42 U.S.C. §§ 15601-15609); *Hatcher v.*

8    *Harrington*, 2015 WL 474313, at *4-5 (D. Hawaii, Feb. 5, 2015). Accordingly, to the extent

9    Plaintiff's complaint alleges violations of the PREA itself he fails to state a claim upon which

10   relief can be granted.[6] *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

11   1990) (as amended) (a complaint fails to state a claim if it lacks a cognizable legal theory).

12   **F.  No Supplemental Jurisdiction Over State Constitutional Claim**

13   Because the Court finds that Plaintiff has failed to raise a plausible federal claim, the

14   Court recommends denying supplemental jurisdiction over Plaintiff's claim that Defendants have

15   violated Article 1 § 3 of the Washington State Constitution. *See* 28 U.S.C. § 1367(c)(3).

16   **G.  Eleventh Amendment Immunity for State Defendants Sued for Damages in Their**

17   **Official Capacities**

18   Plaintiff may not sue Defendants acting in their official capacities for money damages

19   due to Eleventh Amendment state sovereign immunity. *See Dittman*, 191 F.3d at 1026–27. Thus,

20   aside from the ADA claim recommended for dismissal as implausible, Plaintiff may not proceed

21

22

23
_____
[6] Plaintiff's report of a PREA violation was investigated and found to be unsubstantiated. Dkt. 19, at 449.

1  with his suit for damages against Defendants sued in their official capacities on any other federal

2  claim.

3  **II.       Motions for a TRO and a PI**

4          The Court recommends denying Plaintiff's motions for a TRO and a PI because Plaintiff

5  has failed to plausibly suggest he is entitled to relief, and because he has failed to show he will

6  suffer irreparable harm if a TRO or a PI is not granted. Dkts. 5, 16. Under 18 U.S.C. §

7  3626(a)(1)(A),

8              The court shall not grant or approve any prospective relief unless
               the court finds that such relief is narrowly drawn, extends no
9              further than necessary to correct the violation of a Federal right,
               and is the least intrusive means necessary to correct the violation
10             of the Federal right. The court shall give substantial weight to any
               adverse impact on public safety or the operation of a criminal
11             justice system caused by the relief.

12          The purpose of preliminary injunctive relief is to preserve the status quo or prevent

13  irreparable injury pending the resolution of the underlying claim. *Sierra On-line, Inc. v. Phoenix*

14  *Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984). "A plaintiff seeking a preliminary injunction

15  must establish" (1) "he is likely to succeed on the merits," (2) "he is likely to suffer irreparable

16  harm in the absence of preliminary relief," (3) "the balance of equities tips in his favor," and (4)

17  "an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20,

18  (2008). The Ninth Circuit also permits the Court to consider "serious questions" and grant a

19  preliminary injunction if there are serious questions going to the merits; there is a likelihood of

20  irreparable injury to the plaintiff; the balance of hardships tips sharply in favor of the plaintiff;

21  and the injunction is in the public interest." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir.

22  2012).

23

1      Plaintiff in this case fails to establish that a preliminary injunction should be issued. First,

2  as discussed earlier, Plaintiff has not shown a likelihood of success on the merits. Second,

3  Plaintiff fails to show he will suffer irreparable harm if a preliminary injunction is not issued. To

4  obtain injunctive relief, "a plaintiff must show that he is under threat of suffering 'injury in fact'

5  that is concrete and particularized; the threat must be actual and imminent, not conjectural or

6  hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be

7  likely that a favorable judicial decision will prevent or redress the injury." *Summers v. Earth*

8  *Island Inst.*, 555 U.S. 488, 493 (2009). "Speculative injury does not constitute irreparable injury

9  sufficient to warrant granting preliminary relief. A plaintiff must do more than merely allege

10  imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate

11  threatened injury as a prerequisite to preliminary injunctive relief." *Caribbean Marine Servs. Co.*

12  *v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (internal citation and other cited sources omitted;

13  emphasis in original). Here, Plaintiff allegations are deficient and do not state claims upon which

14  relief may be granted, and also do not involve irreparable harm.

15      As Plaintiff has not shown he is likely to succeed on the merits or will suffer irreparable

16  harm, the Court should decline to order injunctive relief. *See Ctr. for Food Safety v. Vilsack*, 636

17  F.3d 1166, 1174 (9th Cir. 2011) (finding the court need not address the remaining elements of the

18  preliminary injunction standard after determining the plaintiff had not shown he was likely to

19  suffer irreparable harm in the absence of preliminary relief). Accordingly, the Court recommends

20  the motions for a temporary restraining order and a preliminary injunction be denied. Dkts. 5, 16.

21                                    **CONCLUSION**

22      The Court recommends declining to serve and **DISMISSING with prejudice** Plaintiff's

23  Amended Complaint, Dkt. 19, for failure to state a claim upon which relief may be granted, 28

1    U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1), and **DENYING** Plaintiff's motions for a TRO and a

2    PI, Dkts. 5, 16.

3            This Report and Recommendation is not an appealable order. Therefore Plaintiff should

4    not file a notice of appeal in the Court of Appeals for the Ninth Circuit until the District Judge

5    enters a judgment in the case. Objections to this Report and Recommendation may be filed no

6    later than **June 14, 2023.** The Clerk should note the matter for **June 16, 2023**, as ready for the

7    District Judge's consideration. The failure to timely object may affect the right to appeal.

8            DATED this 24th day of May, 2023.

9

10                                               _____

11                                               BRIAN A. TSUCHIDA
                                          United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23